JOY COSSICH LOBRANO, Judge.
11 This appeal involves a fee dispute between former and current attorneys of the Plaintiffs, August Guillot and Juli Guillot, individually and as survivors of them minor child, Collin Jacob Guillot, and as natural tutors of their minor child, Madison Guil-lot. Plaintiffs and the law firms of Barrios, Kingsdorf & Casteix, LLP; Lieff, Ca-braser, Heimann & Bernstein, LLP; and J. Van Robichaux, Jr. (hereinafter referred to collectively as “Current Counsel”) appeal the trial court judgment awarding fees and costs to Plaintiffs’ former counsel in this litigation, J. Wayne Mumphrey; Mumphrey Law Firm, L.L.C.; and Glenn E. Diaz (hereinafter referred to collectively as “Intervenors”). Intervenors answered the appeal, requesting that the judgment be modified to increase their fee award.
The facts and procedural history of the underlying litigation from which the instant fee dispute arises are detailed in this Court’s opinion in Guillot v. Daimlerchrys-ler Corporation, 08-1485 (La.App. 4 Cir. 9/24/10), 50 So.3d 173. For purposes of this appeal, we note the following pertinent dates and events: The |2accident from which the cause of action arose in this case occurred on May 21, 1999. Plaintiffs contacted Mr. Mumphrey in the summer of 2001, and a petition for damages was filed by Intervenors on behalf of Plaintiffs on November 30, 2001. In August of 2005, Plaintiffs terminated Intervenors as their attorneys and retained Current Counsel to represent them. On November 6, 2007, Intervenors filed a petition of intervention, asking that their costs and fee interests be fully recognized and protected out of any recovery by settlement or judgment in Plaintiffs’ case. Attached to the petition was the original retainer agreement and contract for legal representation signed by Mr. Guillot on April 2, 2002, which named the Law Offices of J. Wayne Mumphrey as counsel for Mr. Guillot, but did not include attorney Glenn Diaz’s name in the contract. The contract signed by Mr. Guillot on April 2, 2002 was not signed by Mrs. Guillot.
Trial of the Plaintiffs’ claims was held in March 2008, and the trial court rendered judgment in favor of Plaintiffs on April 10, 2008. On April 8, 2008, Intervenor, Glenn Diaz, filed an amended petition of intervention. In this petition, Mr. Diaz asserts that a new identical retainer contract was signed by both Mr. and Mrs. Guillot after Mr. Guillot signed the April 2, 2002 contract, and the new contract also listed Mr. Diaz as counsel of record along with Mr. Mumphrey. The amended petition asserts that the contract signed by both Mr. and Mrs. Guillot was lost in Hurricane Katrina in August 2005. On September 24, 2010, this Court handed down its opinion in the above-referenced appeal of the April 10, 2008 trial court judgment. Guillot, OS-1485, 50 So.3d 173. Subsequent to the rendition of 13this Court’s opinion, the parties entered into a settlement agreement, the details of which were sealed by court order.[1] On December 15, 2010, Plaintiffs filed a reconventional demand against In-tervenors, seeking damages for Interve- *511 nors’ refusal to release funds to them on account of Intervenors’ assertion of a lien and privilege on a portion of attorney fees allegedly due to Plaintiffs in this matter.
On December 21, 2010, Intervenors filed a second amended and restated petition of intervention. In this petition, Intervenors clarified that the phrase “Guillot’s” in the amended petition for intervention referred to both Mr. and Mrs. Guillot. The petition further asserts that the retainer agreement signed by both Mr. and Mrs. Guillot was lost in Hurricane Katrina. Interve-nors attached to the petition an affidavit executed by J. Wayne Mumphrey and Glenn E. Diaz, attesting that both Mr. and Mrs. Guillot signed a retainer agreement, which added Mr. Diaz’s name but was otherwise identical in terms to the agreement signed by Mr. Guillot and attached to the original petition of intervention. Mrs. Guillot denied at trial that she ever signed any written contract with Intervenors.
On August 10, 2011, trial commenced on the intervention claims and reconventional demand. On April 13, 2012, the trial court rendered judgment awarding Intervenors 30% of the 40% pre-appeal contingency fee in their contract with Plaintiffs, together with interest accrued while these funds were in the registry of the court, and costs of $46,130.55. Current Counsel and Plaintiffs have ^appealed the April 13, 2012 judgment, and Intervenors have answered the appeal. The trial court did not issue reasons for judgment, and none of the parties requested written reasons pursuant to La. C.C.P. article 1917.
On appeal, Current Counsel and Plaintiffs argue that the trial court erred in awarding Intervenors 30% of the 40% pre-appeal contingency fee set forth in Inter-venors’ contract with Plaintiffs. Current Counsel and Plaintiffs argue that Interve-nors are entitled to no more than 3% of the 40% pre-appeal contingency fee. In their answer to the appeal, Intervenors argue they are entitled to 30% of a 50% contingency fee, because a 50% contingency fee is the highest percentage to which Plaintiffs agreed in their contract with In-tervenors.[2] The following clause was included in the Intervenors’ retainer agreement and contract for legal representation:
It is understood that should my attorney find it necessary to file a suit on my behalf in order to enforce recovery of my damages that I then assign forty (40%) percent of my claim for his services. If appealed, fifty (50%) percent of the claim.
We initially note that in the trial court judgment, the trial court used the plural “Plaintiffs” in referring to Intervenors’ “contract with Plaintiffs.” This leads us to conclude that the trial court accepted In-tervenors’ claim, which Plaintiffs dispute, that both Mr. and Mrs. Guillot signed a retainer agreement and contract for legal representation with them that included the above-referenced fee agreement, |Band that the contract with both Plaintiffs’ signatures was subsequently lost in Hurricane Katrina. We find no error in that presumed finding by the trial court.
A trial court’s apportionment of a contingency fee is a factual determination and may not be disturbed absent manifest error. Osborne v. Vulcan Foundry, Inc., 96-1849 (La.App. 4 Cir. 9/3/97), 699 So.2d 492, 494, citing Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). In Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 118 (La.1979), the Louisiana Supreme Court held that in cases where a client has been represented by more than *512 one attorney in the same case at separate times and under separate contingency fee contracts, only one contingency fee should be paid by the client. The amount of the fee to be paid by the client is to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts that he executed. Id.
The factors to be considered in determining a reasonable fee for legal services are set forth in Rule 1.5(a) of the Rules of Professional Conduct, as follows:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
|fi(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
Before addressing the argument of Current Counsel and Plaintiffs regarding the apportionment of fees, we find merit in Intervenors’ argument that the highest ethical contingency percentage to which the Plaintiffs agreed in this case was the 50% contingency fee, which Plaintiffs agreed to assign to Intervenors if the case were appealed. Because of this conclusion, we find error in the portion of the trial court’s judgment apportioning the amount of fees owed to Intervenors based on a 40% pre-appeal contingency fee agreement. We find no merit in the argument of Current Counsel and Plaintiffs that the 50% fee is inapplicable because Intervenors were no longer involved in the case at the time of the appeal. The contract that Plaintiffs signed with Interve-nors does not make such a distinction. Under Saucier, supra, the amount of the fee to be paid by the client is to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts that he executed. In this case, that percentage is 50%.
As for the trial court’s finding that Intervenors earned 30% of the fees in this case, Current Counsel and Plaintiffs argue that Intervenors’ contribution to this case merited no more than a 3% share of the total attorney fees because “[o]ther than initiating suit, virtually all of the substantive work in this matter was performed by Current Counsel.” Notwithstanding that assertion, Current Counsel and Plaintiffs admit that Intervenors performed the following tasks on behalf of |7Plaintiffs: 1) filed suit; 2) successfully opposed defense counsel’s attempt to remove the case to federal court; 3) reacquired the vehicle causing Plaintiffs’ injuries, which vehicle had been sold after the accident; and 4) secured Mr. Gerard Rosenbluth as an expert witness, and had the vehicle inspected by him. However, Current Counsel and Plaintiffs argue that the effect of these contributions to the success of Plaintiffs’ case was minimal, and further suggest that some of the work performed by Interve-nors on behalf of Plaintiffs was substandard. By contrast, Current Counsel and Plaintiffs claim that during Current Counsel’s representation of Plaintiffs, they did the following: 1) took all depositions; 2) completed discovery; 3) briefed and ar *513 gued all motions and exceptions; 4) prepared the case for trial; 5) tried the case; 6) handled the appeal; and 7) resolved the case by settlement after the appeal.
While Current Counsel undoubtedly performed the majority of the legal work in this case, the record reflects that the In-tervenors expended considerable time and effort on Plaintiffs’ case and that the legal services provided by Intervenors contributed significantly to the ultimate success of Plaintiffs’ case. Although Intervenors did not keep contemporaneous time records during the almost four-year period that they represented Plaintiffs, the record contains testimony and exhibits indicating that the services provided by Intervenors on Plaintiffs’ behalf included much more than those stated by Current Counsel and Plaintiffs. These services included filing suit, conducting research, gathering documents, conducting discovery, participating in depositions, reacquiring the vehicle involved the accident and arranging for its inspection by an expert witness, successfully defeating defense counsel’s attempt to remand the case to federal court, filing oppositions to defendant’s exception of prescription and motion for 18summary judgment, and identifying and securing witnesses. Considering the evidence presented, we do not find that the trial court erred in concluding that the value of Inter-venors’ services in this matter entitles them to 30% of the attorney fees.
Current Counsel and Plaintiffs also argue that the trial court erred in failing to find that Intervenors were terminated for cause, and in not reducing Inter-venors’ recovery due to the nature and gravity of such cause. The judgment appealed from in the instant case is silent on the issue of whether or not Intervenors were terminated for cause by Plaintiffs. Silence in a judgment on any issue that has been placed before the court is deemed a rejection of that claim. Carter v. Department of Police, 09-0723, p. 6 (La.App. 4 Cir. 10/21/09), 24 So.3d 255, 259; see also, Leary v. Foley, 07-0751, p. 4 (La. App. 4 Cir. 2/13/08), 978 So.2d 1018, 1021; Southern Marine Sales, Inc. v. Matheme, 05-181, pp. 8-9 (La.App. 5 Cir. 11/29/05), 915 So.2d 1042,1047.
The trial on the intervention included a substantial amount of testimony on the issue of whether or not Intervenors were terminated for cause by Plaintiffs. Mr. and Mrs. Guillot both testified that they discharged Intervenors for, among other things, failure to communicate with Plaintiffs, being dilatory in the handling of their case and misrepresenting the reason for the delay in the litigation. However, Plaintiffs’ testimony also revealed that they did not complain about the Interve-nors’ services at any time during the almost four-year period that Intervenors represented them. Furthermore, the testimony given by Mrs. Guillot, particularly during cross-examination, supports a finding that the reason Plaintiffs changed counsel was because their expert witness, Mr. Rosenbluth, refused to continue working with Intervenors, and steered Plaintiffs in the direction of other 19attorneys, including the firm of Lieff, Cabraser, Heimann & Bernstein, LLP, one of Current Counsel representing Plaintiffs. After reviewing the evidence presented on this issue at trial, we find no error in the trial court’s tacit rejection of the claim of Current Counsel and Plaintiffs that Intervenors were terminated for cause.
Current Counsel and Plaintiffs also argue that the trial court erred in failing to address Plaintiffs’ reconventional demand and award damages to them for Interve-nors’ allegedly improper assertion of hen rights pursuant to La. R.S. 37:218. The judgment appealed from is silent on this issue that was fully litigated at trial; *514 therefore, that claim is deemed rejected by the trial court. Carter, 09-0723, p. 6, 24 So.3d at 259; see also, Leary, 07-0751, p. 4, 978 So.2d at 1021; Southern Marine Sales, Inc., 05-181, pp. 8-9, 915 So.2d at 1047.
Plaintiffs claimed that Intervenors were not entitled to assert lien privileges as to their fees and costs due to the absence of a written fee agreement with Mrs. Guillot. As stated above, we find no error in the trial court’s presumed acceptance of Inter-venors’ claim that both Mr. and Mrs. Guil-lot signed a retainer agreement and contract for legal representation with them, and that the contract with both Plaintiffs’ signatures was subsequently lost in Hurricane Katrina.[3] Because we find that In-tervenors were within their rights in asserting lien privileges under La. R.S. 37:218, we find no error in the trial court’s tacit rejection of the claim in Plaintiffs’ reconventional demand that Intervenors improperly asserted such rights. Additionally, we find that Plaintiffs did not prove their entitlement to an award of damages.
ImCurrent Counsel and Plaintiffs next argue that the trial court erred in awarding Intervenors costs in the amount of $46,130.55. They allege that the Interve-nors did not provide adequate proof that they made the expenditures claimed on Plaintiffs’ behalf and that the expenses were reasonably incurred and directly related to the representation undertaken.
We find that the evidence in the record substantiates the award to Interve-nors of $46,130.55 in costs. Absent an abuse of discretion, this Court will not interfere with an award of costs. Vela v. Plaquemines Parish Government, GO-2221, p. 29 (La.App. 4 Cir. 3/13/02), 811 So.2d 1263, 1282. We find no such abuse of discretion in the trial court’s award of costs.
Intervenors argue that the award of costs should be increased to $60,553.98. We note that Intervenors’ answer to the appeal includes only a request that the trial court judgment be modified to calculate their award of attorney fees based on a 50% contingency fee, rather than the 40% fee used by the trial court. As stated above, we find merit in that request. However, the answer to the appeal does not include a request for modification of the award of costs to Intervenors. La. C.C.P. article 2133(A) states, in pertinent part:
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later.
Id. (Emphasis added.)
Because Intervenors’ answer to the appeal does not contain a request for modification of the award of costs, this request is not properly before this Court |nand will not be considered. See Clark v. Schwegmann Giant Supermarket, 96-2301 (La.App. 4 Cir. 1/13/99), 740 So.2d 137.
*515 Finally, Current Counsel and Plaintiffs argue that the trial court erred in awarding any interest to Intervenors prior to the entry of the judgment appealed from. We agree. The trial court judgment awarded interest “accrued while the funds were in registry of the court.” Because the amount of the fee due to Inter-venors was not ascertainable until awarded by the trial court, the trial court should have only awarded interest on the award of attorney fees from the date of judgment. Verges v. Dimension Development Co., Inc., 08-1336 (La.App. 4 Cir. 2/10/10), 32 So.3d 310. The judgment will be amended accordingly.
For the reasons stated above, the trial court judgment is amended to increase the amount of attorney fees awarded to Inter-venors to 30% of 50% of the Plaintiffs’ total recovery. The judgment is also amended to award interest only from the date of the trial court judgment, April 13, 2012. In all other respects, the trial court judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED
BELSOME, J., concurs for the reasons assigned by J. LANDRIEU.
LANDRIEU, J., concurs with reasons.

. Because the details of the settlement were sealed by court order, we will only state percentages, and not dollar amounts, when referring to attorney fees.

. In Plaintiffs’ contract with Current Counsel, the highest percentage to which Plaintiffs agreed was 45% in the event that an appeal was filed.

. In addition to attesting to these facts by affidavit, Mr. Mumphrey and Mr. Diaz both testified at trial that they had written contracts with both Mr. and Mrs. Guillot, and that all contracts were destroyed in Hurricane Katrina, except for the one signed only by Mr. Guillot on April 2, 2002. La. C.C.P. article 1832 states, "[w]hen the law requires a contract to be in written form, the contract may not be proved by testimony or by presumption, unless the written instrument has been destroyed, lost, or-stolen." (Emphasis added.)