ROSEMARY LEDET, Judge.
| j This is an accidental disability retirement benefits dispute. The plaintiff, Mary Bates, commenced this suit against her former employer, the City of New Orleans (the “City”) and the New Orleans Employees’ Retirement System (“NOMERS”). The following is a chronology of the trial court’s judgments in this case:
• On October 31, 2012, the trial court rendered judgment in Ms. Bates’ favor against the City and NOMERS awarding disability retirement benefits from October 12, 2009 through present and continuing “as allowed by law.” Neither a motion for new trial, nor an appeal was taken from this judgment.
• On April 26, 2013, the trial court rendered judgment granting Ms. Bates’ Motion to Enforce the October 31, 2012 Judgment and her Motion for Assessment of Costs. In this judg *777 ment, the trial court used the same language as in its October 31, 2012 judgment — benefits “as allowed by law” — but added the following limiting language — “without any credit or offset.” The trial court also awarded various costs — cost in the specific sum of $484.90 and cost in the general sum of “all outstanding costs for this suit including all costs associated with these motions.”
• On August 9, 2013, the trial court rendered judgment granting Ms. Bates’ Motion to Hold Defendants in Contempt, awarding $1,500.00 in penalties, all costs associated with these motions, and attorneys’ fees.[1]
| pThese two consolidated appeals are from the April 26 and the August 9, 2013 judgments, respectively. For the reasons that follow, we reverse in part the April 26, 2013 judgment; and reverse in full the August 9, 2013 judgment.
FACTUAL AND PROCEDURAL BACKGROUND
On February 22, 1999, Ms. Bates sustained a work-related accident during the course of her employment with the City as a procurement supervisor. As a result of her injuries, she developed a permanent disability that prevented her from returning to work. In October 2005, in the aftermath of Hurricane Katrina, Ms. Bates, along with about three thousand other City employees, was laid off.
From February 22, 1999 through February 22, 2009, the City paid Ms. Bates workers’ compensation benefits. On April 20, 2009, Ms. Bates filed a disputed claim for compensation with the Louisiana Office of Workers’ Compensation; she claimed that there was a dispute regarding her disability status and the February 22, 2009 termination of her indemnity benefits. On December 30, 2009, Ms. Bates settled her workers’ compensation claim for a total amount of $41,500.00. The settlement agreement expressly indicated that $8,300.00 of the total amount was for Ms. Bates’ attorneys’ fee award. On January 5, 2010, the Workers’ Compensation Judge approved the settlement agreement.[2] The judgment approving the settlement stated that Ms. Bates “reserve[d] to herself the right to seek and enforce any retirement benefits that she may be entitled from the City of New Orleans or the Municipal Employees’ Retirement System.”
|sOn October 12, 2010, Ms. Bates filed a Petition for Breach of Contract and Damages against the City and NOMERS. In her petition, she averred that she was vested and eligible for accidental disability retirement benefits under the City’s retirement system as a result of the February 22, 1999 work-related injury she sustained. She further averred that her benefits claim was improperly denied as not timely filed during her employment and that she was entitled by the contract and the law to receive those benefits.
Both the City and NOMERS answered the suit. In their answers, they both included the following affirmative defense: “a credit and/or setoff from any sums paid to or on behalf of petitioners by defen *778 dants by any other insurer, or by any person or entity, specifically pleading ex-tinguishment of same or all of any obligation which may be found due petitioners to the full extent of any such payments.”
On September 24, 2012, a bench trial was held; and the trial court took the matter under advisement. On October 31, 2012, the trial court rendered judgment in Ms. Bates’ favor, ruling:
IT IS ADJUDICATED, ORDERED AND DECREED the Plaintiff is entitled to receive disability retirement benefits from the Municipal Employees’ Retirement System from October 12, 2009, through present and continuing as allowed by law.
Neither a motion for new trial, nor an appeal was taken from this judgment.
In response to the October 31, 2012 judgment, on January 8, 2013, Jesse Evans, Jr., Director of the City of New Orleans Employees’ Retirement System, sent a letter to Ms. Bates setting forth the calculation of her monthly retirement benefits and the time line for payment of the benefits; his letter stated:
|4We have estimated your monthly retirement benefits to be nine hundred twenty-five dollars ($925.00). In addition to the judgment, we must also comply with Chapter 114 Section 226 of the New Orleans Code[3] ... which requires that accidental disability retirement benefits be offset against worker’s compensation settlements received by the retiree. Based upon your worker’s compensation settlement payment of forty-one thousand dollars ($41,500.00), we have calculated the offset period to be 44.864 months. Therefore, your estimated monthly benefit of nine hundred twenty-five dollars. ($925.00) will commence effective July 2013.
In response to Mr. Evans’ letter, on January 10, 2013, Ms. Bates’ attorney sent two faxes to two different recipients. First, he sent the following fax to Mr. Evans:
I have just received a copy of Mr. Evans’ letter to my client, Mary Bates, *779 regarding the offset amount taken on the gross amount of | sher workers’ compensation settlement. However, $8,300.00 of that settlement was for attorney fees and cost as approved by the court. The litigation cost which includes attorney fees cannot be used as a credit toward her disability retirement benefits that the City owes; and only $33,200.00 which is the net amount Ms. Bates received. I ask you to immediately correct and adjust your calculations; and then send a follow-up letter to Ms. Bates and my office with the correct figures and start date.
Second, Ms. Bates’ attorney sent the following fax to the City’s attorney:
Attached is a copy of a letter I just received from Mr. Evans and my response to his.... [T]he City had requested in it[s] affirmative defense the right to offset or take credit for workers compensation benefits; however, the court did not grant that relief to the City. Therefore, it is my position that the Retirement System was denied that relief and no offset should be allowed. We may be willing to resolve the issue by a compromise; but if there is no attempt to do so, then I will be filing a pleading with the court to hold the City and the Retirement System in Contempt of Court and seek to enforce the awarded retirement benefit without any offset or credit.
On February 22, 2013, Ms. Bates filed three motions: a Motion for Assessment of Costs; a Motion to Enforce the October 31, 2012 Judgment; and a Motion to Hold Defendants in Contempt. On April 12, 2013, a hearing was held on the motions. At the hearing, Ms. Bates’ counsel withdrew the Motion to Hold Defendants in Contempt. On April 26, 2013, the trial court rendered judgment granting Ms. Bates’ Motion to Enforce the October 31, 2012 Judgment and her Motion for Assessment of Costs. In its judgment, the trial court stated that its October 31, 2012 judgment was “now final and enforceable.” The trial court also made the following rulings:
IT IS ORDERED that the Defendants, the City of New Orleans and New Orleans Employees’ Retirement System pay Plaintiff disability retirement benefits from the Municipal Employees’ Retirement System from October 12, 2009, through present and continuing as allowed by law without any credit or offset.
PIT IS FURTHER ORDERED that the Defendants, the City of New Orleans and New Orleans Employees’ Retirement System pay Plaintiffs cost in the amount of $484.90; and Defendants to pay all outstanding costs for this suit including all costs associated with these motions.
IT IS FURTHER ORDERED that although the Plaintiff has withdrawn her Motion to hold the defendants in contempt at this time, the court hereby reserves to the Plaintiff the right to re-urge her Motion for Contempt if the defendants fail to comply with the orders of this court.
Thereafter, Ms. Bates filed a second Motion to Hold the Defendants in Contempt; and the City and NOMERS filed a suspen-sive appeal from the April 26, 2013 judgment.
On June 10, 2013, the City and NOM-ERS filed an Expedited Motion and Order to Stay Proceedings. In their motion, they pointed out that they had filed a suspensive appeal from the trial court’s April 26, 2013 judgment. They further pointed out that they had been advised by Ms. Bates’ attorney that he intended to go forward with the hearing scheduled for June 21, 2013 on the second Motion to *780 Hold the Defendants in Contempt, despite the City’s and NOMERS’ pending suspen-sive appeal. They requested that the trial court stay the proceeding pending a decision by this court on the suspensive appeal.
On June 11, 2013, the trial court granted the Expedited Motion and Order to Stay Proceedings, issuing the following order:
IT IS ... ORDERED that proceedings in this matter are stayed and that the hearing on plaintiffs Motion to Hold Defendants in Contempt currently set for June 21, 2013 be and is hereby canceled until a decision is rendered by the Fourth Circuit Court of Appeal on the defendants’ Suspensive Appeal pending before that Court.
17Pespite the above stay order, the June 21, 2013 hearing on the motion for contempt was held.[4] At that hearing, the trial court orally referenced a meeting with counsel the prior day, which apparently prompted the trial court to vacate its stay. At the close of the hearing, the trial court took the matter under advisement. On August 9, 2013, the trial court rendered judgment granting Ms. Bates’ contempt motion, ruling as follows:
IT IS ... ORDERED that the Defendants, the City of New Orleans and New Orleans Employees’ Retirement System, pay sanctions of $1,500.00, all costs associated with these motions as well as attorneys’ fees to be paid within 30 days.
These consolidated appeals followed.
STANDARD OF REVIEW
This court reviews a trial court’s factual findings under a manifest error standard. The manifest error standard is one “of great deference to the factual findings of the trier of fact.” 1 Frank L. Maraist & Harry T. Lemmon, La. Civ. L. Treatise, CIVIL PROCEDURE § 14:14 (1999). The phrase “manifestly erroneous,” in its simplest terms, means “clearly wrong.” Id. (citing Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978)). “Mixed questions of law and fact are also reviewed under the manifest error standard.” Jones v. Capitol Enterprises, Inc., 11-0956, pp. 10-11 (La.App. 4 Cir. 5/9/12), 89 So.3d 474, 483, writ denied, 12-1634 (La.10/26/12), 99 So.3d 651 (citations omitted).
Pure questions of law are reviewed under a de novo standard “without deference to the legal conclusions of the courts below.” Durio v. Horace Mann Ins. Co., 11-0084, p. 14 (La.10/25/11), 74 So.3d 1159, 1168; see also Burnette v. |8 Stalder, 00-2167, p. 5 (La.6/29/01) 789 So.2d 573, 577 (noting that a de novo review standard applies to issues of statutory construction); Henderson v. Bigelow, 07-1441, p. 8 (La.App. 4 Cir. 4/9/08), 982 So.2d 941, 946. As to questions of law, “the standard of review of an appellate court is simply whether the court’s interpretive decision is legally correct.” Ohm Lounge, L.L.C. v. Royal St. Charles Hotel, L.L.C., 10-1303, p. 4 (La.App. 4 Cir. 9/21/11), 75 So.3d 471, 474 (citing Glass v. Alton Ochsner Medical Foundation, 02-0412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, 405).
DISCUSSION
In addressing the arguments raised by the City and NOMERS in their two consolidated appeals,[5] we divide our analysis *781 into the following four issues: (i) affirmative defense, (ii) amended judgment, (iii) costs, and (iv) contempt.
(i) affirmative defense
|gThe pivotal issue on this appeal is whether the City and NOMERS are entitled to an offset under New Orleans City Ordinance, Section 114-226 for the workers’ compensation benefits the City paid Ms. Bates pursuant to the December 2009 settlement agreement.[6] Although the City and NOMERS included in their answers an affirmative defense of “credit and/or setoff,” they contend that the Sec. 114-226 offset they seek is not “relief requested;” rather, they contend that the ordinance is a governing provision of law. They further contend that the trial court, by ordering in its October 31, 2012 judgment that Ms. Bates’ benefits be received “as allowed by law,” recognized their right to the offset pursuant to the ordinance.
Ms. Bates counters that the offset the City and NOMERS seek is relief requested and an affirmative defense. Continuing, she argues that because the October 31, 2012 judgment did not award an offset or a credit, the affirmative defense of offset was denied by the silence of the judgment.[7] She also counters that because the City and NOMERS failed to timely file either a motion for new trial or an appeal from the October 31, 2012 judgment, the issue of their entitlement to the offset is barred by res judicata, La. R.S. 13:4251. Consequently, she contends the offset issue cannot be revisited on this appeal.
Agreeing with Ms. Bates,[8] the trial court at the April 2013 hearing commented: *782 “you [the City and NOMERS] can’t just avail yourself of it [the |10offset] yourself because you think it ought to happen. I didn’t grant you that.” The trial court thus accepted Ms. Bates’ characterization of the offset as an affirmative defense and found that its failure to state in the October 31, 2012 judgment that it was granting the offset constituted a denial of the requested relief.[9]
Although in certain other cases courts have recognized offset as an affirmative defense, “[a]n issue does not automatically become an affirmative defense, as that term is defined by Louisiana case law, simply because it appears among the items listed in La. C.C.P. art. 1005, or because courts have recognized it as an affirmative defense in other cases.” Bienvenu v. Allstate Ins. Co., 01-2248, p. 5 (La.App. 4 Cir. 5/8/02), 819 So.2d 1077, 1080. Rather, whether an issue is an affirmative defense is a question of fact that must be resolved by consideration of the circumstances of the particular case. Id.
The jurisprudence defines an affirmative defense as a defense that “raises a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action.” Allvend, Inc. v. Payphone Commissions Co., Inc., 00-0661, p. 5 (La.App. 4 Cir. 5/23/01), 804 So.2d 27, 30; Webster v. Rushing, 316 So.2d 111, 114, n. 8 (La.1975) (noting that “Black’s Law Dictionary Fourth Edition, defines ‘affirmative defense’ as: ‘New matter constituting a defense; new matter Inwhich, assuming the complaint to be true, constitutes a defense to it.’ ”) “Implicit in that definition is the conclusion that a defendant is not required to raise an issue as an affirmative defense if it does not raise a ‘new matter.’ ” Bienvenu, 01-2248 at p. 5, 819 So.2d at 1080. Additionally, “the purpose of the rule established by La. C.C.P. art. 1005, requiring that defendants specially plead affirmative defenses, is ‘to give fair notice of the nature of the defense and thereby prevent a last minute surprise to the plaintiff.’” Id. (quoting Allvend, 00-0661 at p. 3, 804 So.2d at 29). Applying these principles, the First Circuit in Fishbein v. State ex rel. LSU Health Sciences Center, 06-0549 (La.App. 1 Cir. 3/9/07), 960 So.2d 67, a retirement benefits dispute, rejected Dr. Fishbein’s (the plaintiff’s) argument that the application of two statutes constituted affirmative defenses. The two statutes were La. R.S. 11:701(5) — which defined “average compensation” and established the method of computing a member’s retirement benefits under the statutory scheme — and La. R.S. 11:888 — which provided a correction mechanism for an “error as to the earnings or salary of a [TRSL] member” under the statutory scheme. In rejecting Dr. Fish-bein’s argument that these statutory provisions were affirmative defenses, the First Circuit reasoned:
The intrinsic nature of this scheme is not a “new matter” based upon factual circumstances raised by [the defendants] LSU or TRSL; it is simply part of the *783 mandatory statutory framework or context which determines retirement benefits, and, by extension, Dr. Fishbein’s cause of action. Thus, only issues of statutory interpretation are presented. Where a defense to a plaintiffs claim arises by operation of the very law under which the plaintiff is seeking recovery, the defense need not be affirmatively pleaded and there can be no unfair surprise, since no one may avail himself of ignorance of the law. See La. C.C. art. 5; Salter v. State ex rel. Dept. of Health and Human Resources, 612 So.2d 16B, 166 (La.App. 1st Cir.1992). We | ^conclude that the statutory provisions do not constitute “new matters” for affirmative defenses or for purposes of appeal.
Fishbein, 06-0549 at p. 7, 960 So.2d at 72.
By analogy, the offset contained Sec. 114-226 is not a new matter; rather, it is simply a part of the statutory scheme set forth in the Code of the City of New Orleans under which Ms. Bates is seeking to obtain accidental disability retirement benefits. Indeed, the offset ordinance, Sec. 114-226, cross-references the ordinance on which Ms. Bates’ benefits claim is based, Sec. 114-208.[10] Thus, the trial court erred in characterizing the Sec. 114-226 offset as an affirmative defense. Because the offset is not an affirmative defense, the trial court’s failure to grant the offset in its October 31, 2012 judgment as relief requested did not constitute a denial of the offset. To the contrary, we find, as the City and NOMERS contend, that the trial court, by including in its judgment the language “as allowed by law,” recognized their right to the offset pursuant to the ordinance.
(ii) amended judgment
The second issue is the whether the April 26, 2013 judgment is an improper amended judgment. The City and NOM-ERS contend that the trial court, by adding to its original judgment the limiting language — “without any credit or offset”— issued an improper amended judgment in violation of La. C.C.P. art. 1951. In support, they cite the jurisprudence holding that an amendment that adds to, | ^subtracts from, or in any way affects the substance of a judgment is an improper substantive amendment to the judgment. Ms. Bates counters that the April 26, 2013 judgment did not alter or change the effects of the October 31, 2012 judgment. Rather, she contends that “[i]t is obvious that the Judge never intended to allow defendants any credit or offset.”
The governing statutory provision is La. C.C.P. art. 1951,[11] which at the time the
*784 August 26, 2013 judgment was rendered provided:
On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment, but not its substance, or to correct errors of calculation. The judgment may be amended only after a hearing with notice to all parties, except that a hearing is not required if all parties consent or if the court or the party submitting the amended judgment certifies that it was provided to all parties at least five days before the amendment and that no opposition has been received.
The jurisprudence construing La. C.C.P. art. 1951 has outlined the following well-settled parameters regarding a court’s authority to amend a final judgment:
• “Article 1951 contemplates the correction of a ‘clerical error’ in a final judgment, but does not authorize substantive amendments” Denton v. State Farm Mutual Auto. Ins. Co., 08-0483, p. 6 (La.12/12/08), 998 So.2d 48, 52. An amendment that “adds to, subtracts from, or in any way affects the substance of a judgment, is considered a substantive amendment.” Audubon Orthopedic and Sports Medicine, APMC v. Lafayette Ins. Co., 09-0007, p. 5 (La.App. 4 Cir. 4/21/10), 38 So.3d 963, 969; Nichols v. Nichols, 08-0207, p. 4 (La.App. 4 Cir. 1/14/09), 4 So.3d 134, 136.
|14• The substance of a judgment can be altered only by a timely motion for new trial, nullity action, or appeal. Palmer v. Leclercq, 07-0604, p. 6 (La.App. 4 Cir. 9/24/08), 996 So.2d 21, 25; Peters v. Greyhound Lines, Inc., 10-0969, pp. 3-4 (La.App. 4 Cir. 11/17/10), 52 So.3d 229, 232; Oliver v. Department of Public Safety & Corrections, Office of Alcoholic Beverage Control, 9694-1223 [94-1223], p. 3 (La.App. 1 Cir. 6/23/95), 657 So.2d 596, 597 (noting that “in order to change the substance of a judgment, a party must either seek a new trial or request an appeal. LSA-C.C.P. arts. 1951, 1971 et seq., and 2081 et seq.”).
• “The trial judge cannot, on his own motion or on the motion of any party, change a judgment which has been so signed, notwithstanding it was signed in error.” Bourgeois v. Kost, 02-2785, p. 7 (La.5/20/03), 846 So.2d 692, 696 (citing State ex rel. Vignes v. Judge Civil District Court, 10 So. 294, 43 La.Ann. 1169 (La.1891); and Villaume v. Villaume, 363 So.2d 448, 450-51 (La.1978)).
• “La. C.C.P. art. 1951 does not permit the trial court to substantively alter a final judgment even if the amendment merely expresses the trial judge’s actual intention. The trial court’s written judgment is controlling, even if the trial judge may have intended otherwise.” McGee v. Wilkinson, 03-1178, p. 4 (La.App. 1 Cir. 4/2/04), 878 So.2d 552, 554 (citing Staffer v. Stoffer, 29,458, pp. 3-4 (La.App. 2 Cir. 5/7/97), 693 So.2d 1229,1231).
• A trial court’s authority on a motion to enforce a final judgment is limited to enforcing its judgment as written. Dufrene v. Willingham, 99-1153, p. 5 (La.App. 5 Cir. 4/25/00), 761 So.2d 608, 611 (noting that “[h]ad the trial court come to any conclusion other than to reiterate its original language, the effect would have been an impermissible modification of a final, definitive judgment,” and citing Louisiana Power & *785 Light Co. v. Parish School Bd. of Parish of St. Charles, 93-249 (La.App. 5 Cir. 2/11/94), 639 So.2d 760); see also Petitjean v. City of Rayne, 04-768, p. 3 (La.App. 3 Cir. 11/10/04), 886 So.2d 1267, 1270 (noting that “[w]hile the court had jurisdiction to give effect to that judgment, it did not have the authority to substantively change it.”)
• Substantive amendments to judgments made without recourse to the proper procedures — a timely motion for a new trial or an appeal — are absolute nullities. Bourgeois, 02-2785 at pp. 7-8, 846 So.2d at 696.
• The remedy generally granted by an appellate court when it finds an improper substantive amendment has been made to a final judgment is to set aside and annul the amending judgment and to reinstate the original judgment. Suprun v. Louisiana Farm Bureau Mut. Ins. Co., 09-1555, p. 14 (La.App. 1 Cir. 4/30/10), 40 So.3d 261, 270 (citing McGee v. Wilkinson, 03-1178, p. 4 (La.App. 1 Cir. 4/2/04), 878 So.2d 552, 554-55; Magill v. State, Dept, of Public Safety and Corrections, 27,802, p. 5 (La.App. 2 Cir. 1/24/96), 666 So.2d 1260, 1263; Alliance for Good Government, Inc. v. 1 ^Jefferson Alliance for Good Government, Inc., 96-309, p. 7 (La.App. 5 Cir. 10/16/96), 683 So.2d 836, 839).
Applying these principles, we find that the trial court, in ruling on Ms. Bates’ motion to enforce the October 31, 2012 judgment, was limited to enforcing the original judgment as written. By adding the limiting language, the trial court did not enforce the initial judgment; rather, it made an improper substantive amendment to the original judgment. To the extent the trial court in the April 23, 2013 judgment added the limiting language, the amended judgment is a nullity. Hence, we set aside the limiting language added in the April 23, 2013 judgment and reinstate the language of the original October 31, 2012 judgment.
(iii) costs
In the April 26, 2013 judgment, the trial court also ordered the City and NOMERS to pay Ms. Bates’ costs in the specific sum of $484.90 and in the general sum of “all outstanding costs for this suit including all costs associated with these motions.” The City and NOMERS assign as error the trial court’s assessment of costs against them. In support, they contend that given their compliance with the October 31, 2012 judgment, the trial court had no basis on which to assess costs against them.
The record reflects that the trial court’s basis for assessing costs in the specific sum of $484.90 was Ms. Bates’ Motion for Assessment of Costs for the underlying trial. The motion was supported by documentation of costs in the specific sum of $484.90 — $370.90 for depositions and $114.00 for filing fees. We find no abuse of discretion in the award of the specific sum of $484.90 for those |lficosts. See La. C.C.P. art. 1920 (providing that “the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable”). We, however, find that the trial court’s general award of costs in the April 23, 2013 judgment — its award of “all outstanding costs for this suit including all costs associated with these motions” — was legally erroneous. In suits against state entities, such as the City and NOMERS, La. R.S. 13:5112(A) mandates that cost awards be for a specific sum.[12] *786 We thus affirm the award for the specific sum of costs in the amount of $484.90, but reverse the general award of costs. .
(iv) contempt
The second judgment from which the City and NOMERS appeal is the August 9, 2018 judgment granting Ms. Bates’ contempt motion, imposing $1,500.00 in sanctions, and awarding “all costs associated with these motions as well as attorneys’ fees.” The City and NOMERS contend that the trial court lacked jurisdiction to consider or rule on the execution of the judgment under appeal — the April 26, 2013 judgment — and that the judgment granting the second Motion to Hold Defendants in Contempt was invalid. Furthermore, they contend that the trial court lacked jurisdiction to consider or rule on Ms. Bates’ second contempt motion |17because none of the exceptions enumerated in La. C.C.P. art.2088 apply. They also emphasize that the trial court neither verbally, nor in its judgment, voided or rescinded its stay order.
Ms. Bates counters that her motion for contempt was based on the October 31, 2012 judgment, which was a final, non-appealable judgment. As to the stay order, Ms. Bates explains that the trial court, agreeing with her argument, orally lifted the stay. She further explains that the argument she made to the trial court, which is the same argument she re-urges in opposition to this appeal, is twofold. First, she contends that the City and NOMERS were barred by res judicata from raising the issue of the credit or offset in the trial or the appellate court because that relief was denied in the October 31, 2012 judgment, which was final and enforceable. La. R.S. 13:4231. Second, in the alternative, she contends that even if the City and NOMERS were entitled to an offset or a credit, it was only on the workers’ compensation benefits — not the medical benefits or the attorneys’ fee award— she received in the settlement.[13]
Calculating the offset, Ms. Bates contends that the total settlement amount of $41,500.00 included $8,300.00 for an attorneys’ fee award and $17,906.25 for “medical benefits” — for a Medicare set aside— and thus the net amount of workers’ compensation benefits she received was only $15,203.75.[14] Based on her | ^calculation, *787 Ms. Bates contends that even assuming, arguendo, the City and NOMERS were entitled to the offset, at the time of the contempt hearing they owed her $29,106.25 in disability retirement benefits because the offset, which she calculates to be $15,203.75, had already been expended.[15] Regardless of the offset, she contends that the trial court correctly found the City and NOMERS in contempt for failing to comply with the October 31, 20Í2 judgment. She thus contends that the City’s and NOMERS’ reliance on the offset was misplaced.
119Under the plain language of La. C.C.P. art.2088, a trial court’s jurisdiction is divested on the taking of an appeal only as to “matters in the case reviewable under the appeal.”[16] The jurisprudence *788 has recognized that “the list of circumstances enumerated in Article 2088 is not intended to be exclusive.” French Market Vendors Ass’n, Inc. v. French Market Corp., 12-0964, p. 15 (La.App. 4 Cir. |20 2/13/13), — So.3d-,-, 2013 WL 543627 (Belsome, J., concurring) (citing State Through Dept. of Soc. Services on Behalf of Harden v. S. Baptist Hosp., 94-2228, p. 6 (La.App. 4 Cir. 10/12/95), 663 So.2d 443, 448 (citation omitted)). The jurisprudence has construed the catch — all phrase in Article 2088-all matters “not reviewable under the appeal” — to mean that the trial court retains jurisdiction over all issues that are “unaffected by the appeal,” even issues not specifically enumerated in La. C.C.P. art. 2088. French Market Vendors Ass’n, supra (citing State Through Dept. of Soc. Services on Behalf of Harden, 94-2228 at pp. 6-7, 663 So.2d at 448-49 (citations omitted)).
Applying these principles, we find, as the City and NOMERS contend, that the issue of the Sec. 114-226 offset was a “matter reviewable on appeal” from the April 26, 2013 judgment. The record reflects that the issue of the offset was a pivotal part of the trial court’s determination that the City and NOMERS were in contempt. Indeed, at the hearing on the contempt motion, Ms. Bates’ counsel stated that “the defendants main thrust of not being held in contempt is that there’s a question on whether they’re entitled to an offset.” At the hearing, the trial court judge questioned the attorney for the City and NOMERS whether they had “pulled out [from the total settlement amount] the medical benefits and the attorney’s fees,” as suggested by Ms. Bates’ counsel’s calculation of the offset. Given that the contempt motion centered around the offset issue, which was an issue reviewable on appeal, we find the trial court was divested of jurisdiction to consider and rule 12iUpon the motion. Accordingly, we reverse the trial court’s April 9, 2013 judgment in its entirety.

DECREE

For the foregoing reasons, the trial court’s April 26, 2013 is affirmed only insofar as it awards $484.90 in costs against the City of New Orleans and the New Orleans Employees’ Retirement System; in all other respects, the judgment is reversed. The trial court’s August 9, 2013 judgment is reversed.
APRIL 26, 2013 JUDGMENT AFFIRMED IN PART, REVERSED IN PART; AUGUST 9, 2013 JUDGMENT REVERSED.

. Because the original trial court judge, Judge Lloyd Medley, was on leave, Judge Nadine Ramsey, who was appointed ad hoc for his section, rendered the August 9, 2013 judgment.

. At the trial in this case, it was established that Ms. Bates was paid a total of $144,875.35 in workers’ compensation, which was broken down as follows: $48,303.27 in temporary total disability benefits, and $89,075.08 in supplemental earnings benefits. This included the amount paid in settlement. Although the settlement agreement refers to medical expenses, no express amount or percentage of medical expenses is mentioned.

. This ordinance provides as follows:
Sec. 114-226. Effect of worker's compensation and social security payments on allowances.
(a) Any amounts which may be paid or payable under the provisions of any worker's compensation statute or similar law to a member or to dependents of a member on account of any accidental disability or accidental death shall, in such manner as the board shall approve, be offset against and payable in lieu of any benefits payable out of funds provided by the city under the provisions of the retirement system on account of the same accidental disability or on account of death, expressly including any benefit paid under the provisions of sections 114-208, 114 — 209, and 114-214
(b) The amount of the above offset shall be benefits payable from worker’s compensation or similar statutes, not to include those for medical expenses, before the benefits are reduced by application of either statutes or by any amounts payable by reason of a court judgment or settlement to replace worker’s compensation in lieu thereof. Benefits payable shall not be less than what benefits would be due as vested benefits, as those are determined at the time of disability retirement in accordance with sections 114-215 and 114-216
(c)Should any member receiving ordinary disability benefits become eligible for social security, the amount of his annual pension shall be reduced by an amount equal to 75 percent of two percent of $1,200.00 for each year of creditable service. The board of trustees shall have complete discretion and authority to determine the extent and application of the provisions of subsection (b) of this section and of section 114-204(5) and shall have authority to terminate the annual pension if the employee fails to furnish full and complete information regarding social security benefits. The decisions of the board shall be final.
(Code 1956, § 55-56) ("Sec. 114-226").

. As the City and NOMERS point out, the trial court neither on the record nor in its judgment expressly vacated its stay order.

. In the first appeal, the City and NOMERS assert the following four errors:
1. The district court’s judgment in plaintiff's favor was manifestly erroneous in granting the plaintiff's Motion to Enforce *781 the Judgment despite defendants’ compliance with the original Judgment.
2. The district court manifestly erred in issuing a second judgment with language not in original Judgment in granting plaintiff's Motion to Enforce the Judgment.
3. The district court manifestly erred in issuing a second judgment denying an offset against accidental disability benefits for Workers' Compensation payments paid to plaintiff.
4. The district court manifestly erred in granting plaintiff’s Motion for Assessment of Costs despite defendants’ compliance with the original Judgment.
In the second appeal, the City and NOMERS assert the following assignments of error:
1. The district court’s judgment in plaintiff’s favor was manifestly erroneous in granting the plaintiff’s Motion to Hold Defendants in Contempt despite the Sus-pensive Appeal pending in the Court of Appeal on the original Judgment.
2. The district court manifestly erred in granting plaintiff’s Motion to Hold Defendants in Contempt despite the Court’s Own Order Staying Proceedings in the District Court and cancelling the hearing of Plaintiff’s Motion To Hold Defendants in Contempt.

. The City and NOMERS also mention the coordination of benefits statute, La. R.S. 23:1225 C(l)(c); however, we find it unnecessary to address that statute.

. A well-settled principle is that “[s]ilence in a judgment on any issue that has been placed before the court is deemed a rejection of that claim.” Guillot v. DaimlerChrysler Corp., 12-0888, p. 8 (La.App. 4 Cir. 4/15/13), 113 So.3d 507, 513 (citing Carter v. Department of Police, 09-0723, p. 6 (La.App. 4 Cir. 10/21/09), 24 So.3d 255, 259; see also, Leary v. Foley, 07-0751, p. 4 (La.App. 4 Cir. 2/13/08), 978 So.2d 1018, 1021; Southern Marine Sales, Inc. v. Matheme, 05-181, pp. 8-9 (La.App. 5 Cir. 11/29/05), 915 So.2d 1042, 1047).

. At the hearing on the motion, Ms. Bates’ counsel expressed her position as follows:
In your reasons for judgment, the court noted that the City had asked for and argued a credit and an offset. The Court did not grant them that. And the reason for that is number one, the date that the court said that the retirement benefits were due, there was no settlement of the WC [workers’ compensation claim]. It did not happen until months later. Also, we argued that the defendants were in bad faith. And *782 even though the court may not have found them in bad faith, the court can decide that they’re not entitled to a credit and offset. There is no credit and offset in the judgment. They didn’t appeal it. They didn't ask for a new trial. Therefore, they were denied that affirmative defense.

. In its written reasons for judgment dated October 31, 2012, the trial court mentioned the offset issue — noting that "[tjhe City has raised offset and credit for those disability benefits that the City paid in workers compensation benefits since the basis for the benefits and the type paid as compensation and retirement are identical” — but it did not otherwise mention or address the issue in its October 31, 2012 reasons for judgment or judgment.

. Sec. 114-208, entitled "Accidental disability retirement,” provides as follows:
After exhausting all remedies provided by law including the Americans with Disabilities Act (ADA), upon the application of a member or of the head of his department, any member whom the board finds has been disabled as the natural and proximate result of an accident sustained in service as a member and occurring while in the actual performance of his duty at some definite time and place without wilful negligence on his part may be retired by the board; provided, that a physician nominated by the board shall certify that the member is disabled and unable to secure gainful employment, and that the member should be retired. The decision of the board as to eligibility for retirement under this section shall be final and conclusive.

. The Legislature, by 2013 Acts La. Acts, No. 78, § 1, amended La. C.C.P. art. 1951, effective August 1, 2013, to require a hearing. The article, as amended, retains the language of the prior article, but adds a requirement of a hearing. Before the amendment, Article 1951 provided:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party: *784 (1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.

. La. R.S. 13:5112(A) provides:
In any suit against the state or any department, board, commission, agency, or *786 political subdivision thereof, the trial or appellate court, after taking into account any equitable considerations as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may grant in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, an award of such successful party’s court costs under ■R.S. 13:4533 and other applicable law as the court deems proper but, if awarded, shall express such costs in a dollar amount in a judgment of the trial court or decree of the appellate court.

. In support' of excluding the medical expenses, Ms. Bates cites the express exclusion in the ordinance, Sec. 114-226(b), which provides that the amount of the offset is "not to include those [benefits paid] for medical expenses.” In support of excluding the attorneys’ fee award, she points out that the award was granted by statute to her attorney and was included in the settlement agreement, which the City signed and the Workers’ Compensation Judge approved.

. The only mention in the record of a specific sum for medical benefits or bills included in the settlement was the following questions Ms. Bates’ counsel posed to her at trial:
Q. What was your understanding as to what those benefits were paying you for?
A. I just thought it was a settlement to close the case. I don’t know.
Q. Was it in your mind benefits for the past and’some for the future?
A. I think that’s the way it went, because I think they put a percentage of it for medical bills or something. I’m not sure.
Q. A percentage of it was for medical bills. *787 THE COURT:
Counsel, counsel, counsel, counsel. Stop testifying.
No other mention of the settlement agreement being for a specific sum or percentage of medical bills appears in the record. The settlement agreement contains no specific mention of an amount or percentage of medical bills.

. Ms. Bates points out that she supported her alternative contention by providing the trial court with a copy of the settlement agreement and her calculation of the offset, which was as follows:
[[Image here]]

. La. C.C.P. art.2088 provides:
A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal including the right to:
(1) Allow the taking of a deposition, as provided in Article 1433;
(2) Extend the return day of the appeal, as provided in Article 2125;
(3) Make, or permit the making of, a written narrative of the facts of the case, as provided in Article 2131;
(4) Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132;
(5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126;
(6) Grant an appeal to another party;
(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal;
(8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658 of this Code;
(9) Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal; or
(10) Set and tax costs and expert witness fees.
B. In the case of a suspensive appeal, when the appeal bond is not timely filed and the suspensive appeal is thereby not perfected, the trial court maintains jurisdiction to convert the suspensive appeal to a *788 devolutive appeal, except in an eviction case.